THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JOSÉ SOTO ZARAGOZA, Defendant and Appellant.

No. 14389. Argued June 2, 1950.—Decided November 10, 1950.

 

G. *Giménez Sicardó* and *Santos Amadeo* for appellant. *Vicente Géigel Polanco, Attorney General, J. Rivera Barreras, Fiscal of the Supreme Court,* and *Frank Vizcarrondo Vivas, Assistant Fiscal,* for appellee.

MR. CHIEF JUSTICE DE JESÚS delivered the opinion of the Court.

The fundamental question in this appeal centers on the validity of the search made of the person of the appellant.[1]

According to the evidence of the prosecution on May 3, 1949, while a detective was walking along Monserrate Street, in Santurce, he saw José Angel Santana at a distance of 25 feet, leaning against a car with some papers in his hand, talking with José Soto Zaragoza. The latter was sitting on the front seat, on the right-hand side of the vehicle and his companion, Harry Lake Penn, to his left on the driver's seat. When the detective was at a distance of about five feet from them he noticed that Soto Zaragoza became nervous and referring to the detective, said to Santana: "Look at Virella!" Immediately Santana tried to destroy a list and put in his pocket the papers which he had in his hand; but the detective hastened forward, took the list away from him and seized other papers and the sum of $38.45. Subsequently, he required Soto Zaragoza to come out of the car in order to search him, which he refused to do. Then Lake Penn alighted from the car, joined the group, and signaled Santana to flee, which the detective prevented by seizing Santana by the arms. At that moment Soto Zaragoza came out of the car and, taking some papers out of his pocket, handed them to Lake Penn, who threw them on the floor. The detective picked them up and told them: "You are under arrest, are you coming or not?"

---

[1] Two more defendants, Harry Lake Penn and José Angel Santana were acquitted, as noted hereinafter.

Obeying the order, they all entered the vehicle and went to police headquarters. There the detective searched them and seized on Soto Zaragoza a small piece of paper approximately two inches long by one inch wide on which there appeared only the following numbers: "676 = 2.50, 732 = 2.50".

According to the theory of the defense when at detective's request Soto Zaragoza came out of the car on Monserrate Street, in order to be searched, he turned his pockets inside out without there appearing any evidence to incriminate him. Nevertheless, the detective arrested all of them and filed a complaint against them for violation of § 4 of Act 220 of 1948.[2]

The defendants filed a timely motion requesting suppression of the documentary evidence so obtained. The motion was denied and at the trial they objected to its admission on the same grounds. The evidence was admitted over defendants' objection and finally the court stated that the only document connected with the *bolita* game was the one previously described.[3] Consequently, it declared Soto Zaragoza guilty,

---

[2] "Section 4.—Any person caught carrying or transporting or who has in his possession for any reason any *papeleta, billete,* ticket, notebook, list of numbers or letters, slips, or implements which can be used for the unlawful games of *bolita, bolipul,* combinations connected with the pools or *bancas* of the racetracks of Puerto Rico, and clandestine lotteries, and any person who possesses, sells, or in any way transports these or any other similar ones which may be utilized or used in said unlawful games or connected with the practice thereof, shall be guilty of a public offense and shall be immediately arrested and the case shall be brought without delay before the district attorney of the judicial district having jurisdiction on the matter, who shall file the proper information. Such person shall, upon conviction, be punished by imprisonment in jail for a term of not less than six (6) months or more than two (2) years; and for the second and subsequent violations, shall be punished by imprisonment in the Penitentiary for not less than one (1) year nor more than ten (10) years. *Provided,* That all trials for violations of the provisions of this Act shall be heard in the district courts by the court without a jury, exclusively, and the judges of the district courts of Puerto Rico are hereby directed to give preference to the hearing of all cases involving a violation of any of the provisions of this Act."

[3] The Judge who entertained the motion for suppression of evidence was not the one who heard the case on the merits.

sentenced him to one year in jail, and acquitted the other two defendants.

■ Since no subsequent offenses were alleged, the crime charged under § 4 was a misdemeanor. Consequently, since the detective did not have a warrant, he could not arrest the appellant unless the latter had committed or attempted to commit an offense in his presence.[4] But we have already said that when the detective seized the documents which Santana had, and which later appeared to have no connection with the *bolita* game, the appellant was sitting in the car without apparently doing anything else but carrying on a conversation with Santana. Under these circumstances, the detective had no authority to arrest him. Since there was no legal arrest, the search of Soto Zaragoza at headquarters as a result of said arrest was unlawful, *U. S. v. Di Re*, 332 U. S. 581. The evidence obtained by that search was illegal and the conviction of appellant based on evidence so obtained can not stand.

The trial judge is not correct when he maintains that the search was legal because the appellant himself voluntarily furnished the incriminating evidence. When making this statement, the judge overlooks the fact that, according to the evidence of the prosecution, the only documents seized on Soto Zaragoza at Monserrate Street, were those he handed to Lake Penn and which the trial judge found were not connected with the game of *bolita*. And, according to appellant's

---

[4] Section 116 of the Code of Criminal Procedure provides:

"A peace officer may make an arrest in obedience to a warrant delivered to him, or may, without a warrant, arrest a person:

"1. For a public offense committed or attempted in his presence;

"2. When a person arrested has committed a felony, although not in his presence;

"3. When a felony has in fact been committed and he has reasonable cause for believing the person arrested to have committed it;

"4. On a charge made, upon a reasonable cause, or the commission of a felony by the party arrested;

"5. At night, when there is reasonable cause to believe that he has committed a felony."

version, when he turned his pockets inside out on Monserrate Street obeying the command to alight from the car to be searched, there was nothing in them connected with said game. It was at headquarters by virtue of the illegal arrest made on Monserrate Street, where, according to the detective, he seized the evidence on which the conviction was based.

The judgment will be reversed and the defendant acquitted.

Mr. Justice Snyder did not participate herein.

